T. L. PATTERSON v. J. W. MILLS et al.

*Action to Foreclose Mortgage—Parties—Issues—Prior Deed Unregistered—Connor's Act—Constructive Notice—Practice.*

1. Where, in a proceeding to foreclose a mortgage, a person who claimed under a deed antedating the mortgage but not registered until after the commencement of the action, was made a party, the rights of such person were not affected by the fact that an heir of a deceased co-grantee in such deed was not also made a party and an exception to the proceeding on that ground is untenable.

2. Where, in the trial of an action, the issues settled by the Court are such as to enable each party to have every phase of his contention presented, or if the issue submitted is the only one raised by the pleadings, this Court will not declare error either as to the form or number of the issues submitted.

3. Possession to constitute notice must be open, notorious, exclusive and

existing at the time of the purchase by the party to be affected thereby.

4. Where one of the defendants in an action to foreclose a mortgage claimed under a deed from the mortgagors, (her brothers) antedating the mortgage but not registered until after the commencement of the action and on the trial it appeared that the mortgagors had owned and cultivated the land; that there was no house or fence on the land; that, after the date of the unregistered deed in question to their sisters, they continued to cultivate it and exercise the same ownership as before and continued to list it for taxation in their own names and that they and their sisters lived in a house on an adjoining tract; *Held* that such acts were not inconsistent with the paper title nor did they show exclusive, open and notorious possession in the sisters or actual possession by them.

5. It cannot be assumed that an assignment of error is a correct statement of the facts therein recited when such facts do not appear in the case stated by the trial Judge.

6. An omission to charge on a particular point is not error when no special instruction was asked thereon.

CIVIL ACTION to foreclose a mortgage tried at February Term, 1897, of IREDELL Superior Court before *Starbuck, J.*, and jury. The note and mortgage were executed by defendants G. F. and J. W. Mills to T. A. Patterson on the 23rd day of January, 1884, and recorded in Iredell county on the 13th of March, 1884. Patterson died in the year 1888 and his administrator assigned said note and mortgage to plaintiff on January 28th, 1891. There was no controversy as to the amount due on note and mortgage.

Defendant Sarah Mills an unmarried sister of defendants, G. F. and J. W. Mills, the mortgagors, claimed title to the land in controversy with the heirs at law of a deceased sister, under an unregistered deed executed by J. W. and G. F. Mills, her brothers, with whom she and her sister lived. This deed bears date 1878 and was registered January 1, 1896, after the commencement of this action, the said Sarah alleging notice on the part of said mortgagee of her said deed and also alleging possession and occupancy by her and her said sister of said land.

Defendants tendered following issues: 1. At the time of the execution of alleged mortgage, were Sarah Mills and Mary Mills the owners of the land? 2. At the time of the execution of said mortgage was defendant Sarah in the actual possession of the land? 3. Did plaintiff's intestate and plaintiff have knowledge of defendant's claim at the time of execution of the mortgage? The Court declined these issues, being of opinion that the matters embraced in them could not be presented, &c. Defendants excepted. The Court settled as follows the issues, to which there was no exception: 1. What amount if any is due on plaintiff's mortgage? Answer (by consent) $————. 2. Is the un-registered deed set up by Sarah Mills and others void as to the plaintiffs?

Plaintiff introduced in evidence the note and mortgage bearing date January 23, 1884: executed by G. F. and J. W. Mills to T. A. Patterson, registered 13th March, 1884.

J. M. Patterson testified: "The amount of the debt was $222.45 at 8 per cent. payable to T. A. Patterson, now dead. I am his administrator. I assigned mortgage to T. L. Patterson on 28th January, 1891. He is now the owner of it. I was agent of my father T. A. Patterson when note and mortgage were executed in 1884. Had no knowledge at that time that Sarah Mills had a deed or any claim upon the land. Never heard of her claim to this land till after this suit was instituted. In 1886 she and her brother gave me an indemnity mortgage on 3 tracts including this tract and the home place tract and she then told me she had no interest in any of the land except the home place." The indemnity mortgage referred to by this witness was particularly described by the next witness T. L. Patterson, who testified: "I never heard of the claim of Sarah Mills until after I advertised the lands for sale under the mortgage. All the defendants G. F., J. W. and Sarah lived together on

the home place which is a tract adjoining that in controversy, and have lived there that way before and after the execution of the mortgage. J. W. and G. F. Mills have been in possession of the land ever since. Have known they worked and cultivated the land. They told me they owned it. They all lived together on the home place, a different tract from the one mortgaged. There is no house on the land mortgaged and no fence around it. I never heard of Sarah's claim until ten days after I advertised it for sale under the mortgage, which was perhaps a month before I brought this suit." On cross examination: "J. M. Patterson and I went security for G. F. and J. W. Mills in 1886 for their appearance at Court and they executed a mortgage upon three tracts of land—the home place, the land in controversy, being a 54 acre tract, and another tract of 84 acres, to indemnify us. G. F. and J. W. and Sarah all signed the mortgage. Sarah said at this time that she had no interest in any of the land except the home place, which was also included in the mortgage. All the defendants lived together on the home place and all were and are unmarried."

Defendants introduced following evidence: Deed executed by G. F. and J. W. Mills to Sarah Mills and Mary Mills dated July 17, 1878, conveying land in controversy, proved July 17, 1878, and registered January 1, 1896. Sarah Mills testified: Am sister of J. W. and G. F. Mills— live six miles from T. L. Patterson—four of us are all living together—sister Mary died leaving no children—I have been in possession of the 54 acre tract since 1878. When I got the deed the 54 acre tract and 80 acre tract, where we live, were all one plantation. I have been cultivating it. I had my brothers to cultivate it for me. I have worked in the field myself. I was present and had my deed when the mortgage was drawn up August 11, 1886, (the indemnity

mortgage). J. M. and T. L. Patterson were there. J. M. Patterson drew it up. Don't know that anything was said why I signed it. We paid our brothers $800 for the land. My brother bought the 54 acre tract, the land in contro- versy, from Mr. Little—we helped to pay for it—they bor- rowed the money from us to pay for it and gave us notes, as they could not pay us back and we wanted our money, they made us the deed. I rented the land to my brothers for 50 dollars a year. And they worked and cultivated the farm and made sub-rental contracts for part of it. My brothers and I have all been living together all our lives. We rented the land to our brothers ever since 1878. I worked some in the crops. Brothers had control of the farm. When I worked I did so of my own accord and to help them. We all lived on the home place—no difference in our way of living before and after the deed, or in the management of the farm except that they paid us rents."

James Mills testified: "Am brother of Sarah. She has owned and controlled the land since 1878. I was present when the indemnity mortgage to James and Thomas Patter- son was made in 1886. This 1878 deed was there. James got the boundaries from it. Nothing said about why my sister signed the mortgage—Patterson would not take it without her signing. In 1886 I told Thomas Patterson that my sister had some interest in the 54 and 82 acre tract. I was trying to borrow money. My brother and I have cul- tivated the land all the time—paid our sister $50 a year rent. At the time the indemnity mortgage was given, noth- ing was said to Thomas Patterson about sister's interest in the land. I told J. and T. Patterson when I executed the mortgage in 1884 that I had no interest in the land but that it belonged to sister. T. Patterson requested me to keep it a secret. There is a house on the 54 acre tract which is known as the home place—the land in controversy joins

the home place." On cross examination the witness said: "No house on the mortgaged land, no one living on it, no fence around it and no natural boundaries. My brother and I cultivated and managed the mortgaged land after the deed to Sister just as we did before, except that we paid rent to sister. We returned it for taxation in our names all the time before and since the deed, but sister furnished the money to pay taxes since the deed. All four of us are single and live together as one family on the home place."

George Mills testified in his own behalf: "Thomas Patterson came to my house and asked us to give the mortgage. We executed deed in 1878 to sisters for $800 and then rented the land from them at $50 a year. Sarah has been in possession since 1878. The Pattersons knew of this deed made in 1878." On cross examination: "We all lived together on the home place. My brother and I managed and cultivated the land since 1878 the same as we did before, except we paid rent."

T. L. Patterson being recalled said: "There was nothing said to George and James Mills about keeping it a secret. Neither one of them ever told me that their sisters owned the land." J. M. Patterson recalled: "Neither my father nor myself knew of Sarah's deed at the time the mortgage was made—none of them ever told me that their sister had any claim on the land."

After the conclusion of testimony his Honor stated that he would only submit to the jury the question whether J. M. Patterson the agent of T. A. Patterson, the mortgagee, and T. A. Patterson himself had notice of the deed from G. F. and J. W. Mills to Sarah and Mary Mills, or their claim of ownership at or before the execution of the mortgage to T. A. Patterson in 1884. Defendant Sarah Mills excepted for that (1) That, if at the time the mortgage was executed by G. F. and J. W. Mills to J. M. Patterson agent, said

PATTERSON *v.* MILLS.

J. M. Patterson was informed of the rights of Sarah and Mary in the land and took the mortgage under these circumstances then the mortgagee took with notice of the claim of Sarah and Mary. (2) That T. L. Patterson in taking an assignment of the past due note of his father took the same subject to the equities of Sarah and Mary as against T. A. Patterson. (3) That if Sarah and Mary had an unregistered deed made in 1878 from G. F. and J. W. Mills to the land in dispute and have remained in possession ever since, this is notice to plaintiff and those under whom he claims, and their deed must prevail against plaintiff's mortgage, and the possession of Sarah and Mary and their exercising right of ownership over the land since 1878 renting the same to their brothers and claiming the same under the unregistered deed was notice to T. A. Patterson and also to T. L. Patterson. (4) If plaintiff had been informed of the claim of Sarah and Mary in the land by G. F. and J. W. Mills at and before he took the assignment of the note and mortgage, then he took the same with notice and subject to the unregistered deed.

The Court gave the first instruction and declined to give the 2nd, 3rd, and 4th—holding that from all the testimony, the character of the possession of Sarah in connection with her brothers, was not sufficient evidence to go to the jury upon the question of constructive notice. Defendant excepted. The Court among other things charged that, under the registration laws, the deed to Sarah and Mary was void as against the mortgage to Patterson, unless Patterson or his agent, at or before the execution of the mortgage, had knowledge that Sarah and Mary had a deed to or claimed to own the land; that it made no difference whether Patterson acquired knowledge of Sarah's claim at the time the indemnity mortgage was given, for the reason that the mortgage under which plaintiff claimed had already been executed.

As to the burden of proof the Court charged that it was upon the defendant Sarah to prove by preponderance of evidence that Patterson himself or his agent had knowledge of her claim of ownership at or before the execution of the mortgage." (Only so much of the charge as is pertinent to defendant's exception has been set out).

There was a verdict for plaintiff, motion by defendant for new trial to bring in other parties: "1.  For that all the parties in interest are not before the Court, as it appears from the record that at a former term it was made to appear that one Margaret A. Smallman was an heir at law of Mary Mills, deceased, and that she is a minor and has not had a guardian *ad litem* appointed to represent her in this action as required by law.  2.  For that the Court failed to instruct the jury that if Sarah and Mary had deed made to them in 1878 and remained in possession of the land ever since, exercising rights of ownership over it, such possession being open and notorious, such possession is notice to plaintiff and to those under whom he claims, and the deed to Sarah and Mary although unregistered must prevail against the mortgage under which plaintiff claims, and should find the issue in favor of defendant.  3.  For that the Court should have charged, as asked by defendant, that Patterson in taking an assignment of the past due note declared on, made to his father by James and George Mills, took the same subject to equities of these defendants, and should answer the issue submitted on this ground in favor of defendants.  4.  For that the instructions as given are erroneous for failing to give the instructions as above set forth, and also in this, *to-wit*  (a)  It states that the unregistered deed set up by Sarah and Mary is void as against the mortgage of plaintiff.  (b)  It states that it makes no difference whether any notice was given at the time the indemnity mortgage was given, because at the time it was executed

121—34

this mortgage had already been made. The defendants contend that the evidence relating to the circumstance connected with the indemnity mortgage tended to fix J. M. Patterson, the acknowledged agent of T. A. Patterson, with knowledge of the title to the land in these defendants. 5. For that the Court failed to submit the issues tendered by defendant. 6. For that the Court instructed the jury that the burden was on defendant upon the one issue submitted to the jury involving matters of fact alleged by plaintiff and expressly denied by defendants. 7. For that the Court erred in submitting the one issue which was submitted." Motion for new trial denied and defendants excepted and appealed from the judgment rendered.

*Messrs. Armfield & Turner*, for plaintiff.
*Messrs. Long & Long*, for defendants (appellants).

CLARK, J.: This proceeding is to foreclose a mortgage which was executed and recorded in 1884. Sarah Mills is brought in as a defendant because she claims under a deed dated in 1878, but which remained unregistered till July 1896, after this action was begun. There is nothing in her exception that one of the heirs at law of her deceased sister, who was named as grantee with her in the unregistered deed, is not made a party. Sarah Mills is not interested in that, in any way, as her rights cannot be affected thereby.

Every phase of the defendants' contention could have been, and was presented on the issue as settled by the Court, and, when this is so, we will not find error as to the mere form or number of the issues submitted: *Rittenhouse* v. *Railway*, 120 N. C., 544; *Humphrey* v. *Church*, 109 N. C., 132; *Denmark* v. *Railroad*, 107 N. C., 185. Besides, the issue submitted was the only pertinent one raised by the pleadings. Issues upon mere evidential matters should not be submitted. *Grant* v. *Bell*, 87 N. C., 34; *Patton* v. *Railroad*, 96 N. C., 455.

Had the unregistered deed been executed since Chapter 147, Acts 1885, known commonly as "Conner's Act," no notice to a subsequent purchaser or mortgagee, however full and formal, would supply the want of registration of the prior conveyance. *Maddox* v. *Arp*, 114 N. C., 585; *Quinnerly* v. *Quinnerly*, Ibid, 145; *Barber* v. *Wadsworth*, 115 N. C., 29; *Hooker* v. *Nichols*, 116 N. C., 157. The unregistered deed, however, is alleged to have been made prior to the Act of 1885, and Sarah Mills contends that she comes within the exception therein that no purchase shall avail as against any unregistered deed executed prior to December 1, 1885, when the person holding under such unregistered deed is in the actual possession of the land, or the purchaser has actual or constructive notice of such unregistered deed. The Court instructed the jury, at defendant's request, that, if the mortgagee when he took the mortgage, had information of the rights of Sarah Mills and her sister, he took with notice. The finding of the jury settles that there was no actual notice, and his Honor properly held that there was no constructive notice. The evidence was that the mortgaged land had no house or fence on it; that the mortgagors, G. F. and J. W. Mills, two brothers owned the premises and cultivated them; that after the date of the deed made to Sarah and Mary Mills, their sisters, the said G. F. and J. W. Mills continued to cultivate and exercise the same ownership thereover as before, and have continually ever since listed the same for taxes in their own names, but they allege that they paid their sisters rent ($50. per annum) and were furnished money by said sisters to pay the taxes. All four were unmarried and lived together in a house on an adjoining tract. There was no actual notice, and herein this case differs from *Cowan* v. *Withrow*, 111 N. C., 306, S. C. 112 N. C., 736, S. C. 114 N. C., 558 and S. C. 116 N. C. 771. Constructive notice is a legal inference from estab-

lished facts and arises when "the presumption of notice is so violent that the Court will not allow it to be contradicted." *Bost* v. *Setzer*, 87 N. C., 187 and cases cited; Story Eq. Jur. 399; 16 Am. & Eng. Enc. 791. Possession to constitute constructive notice must be "open, notorious, exclusive and existing at the time of the purchase" (*Edwards* v. *Thompson*, 71 N. C., 177; *Bost* v. *Setzer, supra,*) and it is not such notice when the grantor remains in possession after the conveyance, or if the possession is equivocal. 16 Am. & Eng. Enc. 803. Here, the alleged grantors exercised the same acts of dominion and ownership, as before, cultivating the land and paying the taxes in their own names, and living with their sisters on an adjoining farm. From this there were no acts inconsistent with the paper title, nor showing "exclusive, open and notorious possession" in the two sisters nor of actual possession by them, even if the evidence of a promise to pay, or payment of rent to them was made. *Allen* v. *Bolen*, 114 N. C., 560. In all the cases in our Courts of constructive notice from possession, the actual possession was in some one else than the vendor. *Johnson* v. *Hauser*, 88 N. C., 388; *Bost* v. *Setzer, supra*; *Webber* v. *Taylor*, 55 N. C., 9.

The second prayer for instruction was properly refused. Sarah Mills had no equity in the note sued on and the plaintiff's taking it after maturity in no wise affects her.

The Court properly charged that the burden was upon the defendant, Sarah Mills, to show that the mortgagee had actual or constructive notice of the unregistered deed, so as to entitle her to come within the proviso in the Act of 1885. There was no error in instructing the jury that it was immaterial whether or not the plaintiff received actual notice of the unregistered deed in 1886 which was two years after the mortgage in suit was executed.

The recital in the defendants' exceptions (4 a) as to what

the Judge charged is not sustained by what the Judge says was his charge, and goes for naught. As was said in *Merrell* v. *Whitmire*, 110 N. C., 367, citing *Walker* v. *Scott*, 106 N. C., 56, "We cannot assume that an assignment of error is a correct statement of the facts therein recited, when such facts do not appear in the case stated by the Court."

The second exception which was for failure to give a certain instruction, which was not prayed for, cannot be sustained, first, because the possession of Sarah Mills was not shown to be "open, notorious and exclusive" and for the further reason that the omission to charge upon a particular point is not error; if the party desires a specific instruction thereon it is his duty to ask for it. *Boon* v. *Murphy*, 108 N. C., 187; *State* v. *Varner*, 115 N. C., 744; *State* v. *Ussery*, 118 N. C., 1177; *Nelson* v. *Insurance Co.*, 120 N. C., 302; *State* v. *Pritchett*, 106 N. C., 667; *Bethea* v. *Railroad*, Ibid 279; *State* v. *Bailey*, 100 N. C., 528; *King* v. *Blackwell*, 96 N. C., 322; *Willey* v. *Railroad*, Ibid 408; *Morgan* v. *Lewis*, 95 N. C., 296, and numerous other cases cited in Clark's Code (2nd. Ed.) pp. 382, 394 and 399.

Affirmed.