### STATE v. DANIEL.

(Filed September 26, 1905).

*Homicide—Premeditation and Deliberation—Cooling Time —Questions for Jury—Evidence.*

1. Where the design to kill is formed with premeditation and deliberation, it is not necessary for it to exist any definite length of time before the killing actually takes place.

2. Where a prisoner who has killed a person displays thought, contrivance and design in the manner of securing and handling his weapon, such exercise of contrivance and design denotes deliberation—the exercise of judgment and reason rather than violent and ungovernable passion.

3. The existence of premeditation and deliberation is a fact to be found by the jury when there is any evidence to warrant the finding.

4. Where, without any provocation in law or in fact, the prisoner who is carrying a concealed and loaded weapon on an excursion train, takes it from his left pocket, transfers it behind his back to his right hand, raises it and points it at the deceased, warning him to "look out" and then fires the fatal shot, and leaves the car singing a flippant song, *held*, that this is sufficient evidence of premeditation and deliberation.

5. If the prisoner slew on a principle of revenge for a fancied wrong, which was very trivial in its nature, having fully made up his mind to kill to avenge it, he is guilty of the capital felony.

INDICTMENT for murder against Preston Daniel, heard by *Judge Geo. W. Ward* and a jury, at the June Term, 1905, of the Superior Court of MARTIN County. From a conviction of murder in the first degree, and the sentence pronounced thereon, the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
No counsel for the prisoner.

WALKER, J.   The defendant was indicted for the murder of William Eborn.   He was convicted of murder in the first degree and from judgment rendered upon the verdict he appealed.   There is but one exception.   At the close of the testimony the defendant's counsel requested the court to charge the jury that "There is not sufficient evidence of premeditation and deliberation on the part of the defendant and that upon the evidence the jury is not warranted in convicting the defendant of a graver offense than murder in the second degree."   The court refused to give this instruction and the defendant excepted.   The court then charged the jury fully upon the law and the evidence, and explained to them the different degrees of homicide as defined by the statute, but did not in its general charge give the instruction requested by the defendant.

It is well settled that if there was any evidence to support the verdict, the defendant must fail in his contention.

We think there was not only some, but abundant evidence of premeditation and deliberation.   To demonstrate this, requires us to state the substance of the testimony.   The defendant and the deceased were on an excursion train going to Parmalee.   When they arrived at that place the defendant got off the train and went to a bar for some whiskey.   When he came back to the car the deceased was sitting by Gertrude Little, who was escorted by the defendant.   The latter then told the deceased that he must not sit by his girl when he was out.   The deceased got up and walked over to the other side of the car and sat down, saying at the time, "This is a diabose crowd."   When the defendant heard that remark he drew his pistol from his left pocket and put it in his right hand, and then "hollored 'look out' as the deceased turned his head," the ball striking the latter over the eye. When the defendant shot, he threw his head back twice and then left the car, and sang a song, "I am going where I have never been before."   A witness, Almira Little, testified that

STATE *v.* DANIEL.

she saw the defendant with the pistol in his hand, and when he shot Eborn, and that "it was not any time hardly" after she saw him with the pistol before he fired, and that Eborn was not doing anything when the defendant shot. He had the pistol in his hand when she first saw him, and his hand was resting on his knee. There had been no previous quarrel or altercation between the parties. Another witness saw the defendant take his pistol from his left pocket and carry it around his body to his right hand and hold it behind him, "or so that the witness could not see it long enough to shake hands." He then pointed it and said "look out" and fired at Eborn, who had a cigar in his mouth. This witness also stated that they had not been mad with each other. Gertrude Little testified: "I was on the excursion that day; prisoner was my company. Just a little before the train got to Parmalee, prisoner came in and sat in front of me. The seat I was in faced his. Eborn had not been sitting with me at all. I looked out of the window." The case was not argued in behalf of the defendant in this court, and therefore we are at a loss to know upon what ground it was contended below that there was no evidence of premeditation and deliberation. We can only conjecture that it was thought a sufficient time had not elapsed to weigh the matter and form a definite and deliberate purpose to kill, or that the absence of any previous animosity towards the deceased disproved premeditation, or that the defendant was suddenly aroused to anger when he saw the deceased sitting with his girl, and shot immediately in hot blood, being under the influence of *furor brevis,* and without time to think and form a cool and deliberate purpose to kill. All of these contentions, while somewhat differently stated, are practically one and the same in substance and in law. It will of course not be denied that, where the design to kill is formed with premeditation and deliberation, it is not necessary for it to exist any definite

length of time before the killing actually takes place. *State v. Spivey,* 132 N. C., 989.

Now as to the other question. In *State v. Lipscomb,* 134 N. C., 694, we said: "There was ample time for deliberation and premeditation by the defendant according to any rule that has been laid down upon the subject. No particular time is required for this mental process of premeditation and deliberation. The question always is, whether, under all the facts and circumstances of the case, the defendant had previously and deliberately formed the particular and definite intent to kill and then and there (or at any time afterwards) carried it into effect. This is a question for the jury to determine," citing *State v. Johnson,* 47 N. C., 247, and *State v. McCormac,* 116 N. C., 1034. "The question whether or not there has been deliberation" (says Kerr in his work on Homicide, sec. 72,) "is not ordinarily capable of actual proof, but must be determined by the jury from the circumstances. It has been said that an act is done with deliberation, however long or short a time intervenes after the intent is formed and before it is executed, if the offender has an opportunity to recollect the offense," or, we may add, to be aware of what he is about to do and its consequences. And again: "Where a prisoner who has killed a person displayed thought, contrivance and design in the mode of possessing himself of the weapon used or of disposing of it immediately after the blow was struck (or, we will say in this case, in the manner of securing and handling his weapon, as the defendant did), such exercise of contrivance and design denotes deliberation—the presence of judgment and reason rather than violent and ungovernable passion." P. 72. We have uniformly held that the existence of premeditation and deliberation is a fact to be found by the jury, when there is any evidence to warrant the finding. Can it be said there is no such evidence here? Without any provocation in law or in fact the defendant, who is carrying a concealed and

loaded weapon on an excursion train, takes it from his left pocket, transfers it behind his back (a fact which indicates a purpose to conceal his action) to his right hand, in which he could use it more readily and effectively, raises it and points it at the deceased, warning him to "look out" and then fires the fatal shot. When we consider these facts in connection with the utter and cold indifference of the defendant after the shooting, what more deliberate act upon previous reflection and meditation, we may well ask, could be imagined than this one. The evidence was quite as strong as it was in *State v. Hunt,* 134 N. C., 684; *State v. Teachey,* 138 N. C., 587; *State v. Exum, Ibid.,* 599; *State v. Conly,* 130 N. C., 683; *State v. Lipscomb* and *State v. McCormac, supra,* in which convictions for the capital felony were sustained. Indeed, the defendant's intent to kill was more calmly and deliberately conceived and executed than was the intent of any one of the defendants in the cases above cited. There was some ground to argue in those cases that the slayer might have committed the act in a transport of passion, but there is no evidence in this case to indicate anything but coolness of design and a deliberate purpose recklessly and wantonly to take human life, all of which was prompted by a bad heart, desperately wicked and fatally bent upon mischief. The mere fact that the defendant accomplished his purpose within a comparatively short space of time can make no difference. What he did just before he killed, and his conduct just afterwards, coupled with what he then said and the manner of saying it—his flippant song—all tended to show that he was cool and deliberate when he shot and in the full possession of his faculties, being not at all under the influence of any violent or ungovernable passion. The slight provocation, if provocation it may be called, upon which he may have acted, was not calculated, as it seems to us, to arouse his anger to such a degree as to dethrone his reason for the time or to render him incapable of deliberate thought, even

in view of the shortness of time which elapsed. "The celerity of mental action is such that the formation of a definite purpose may not occupy more than a moment of time; hence the important question in such a case is to determine whether the external facts and circumstances, at the time of the killing, as well as before and after that time, having connection with, or relation to it, furnished satisfactory evidence of the existence of a calm and deliberate mind on the part of the accused at the time the act was committed. If they show a formed design to take the life of the person slain, or to do him serious bodily harm, which in its necessary or probable consequences may end in his death, he is guilty of murder in the highest degree." Kerr on Homicide, sec. 72. If the defendant slew on a principle of revenge for a fancied wrong, which was very trivial in its nature, having fully made up his mind to kill to avenge it, he is still guilty of the capital felony. "For let it be observed that, in all possible cases, deliberate homicide upon a principle of revenge, is murder. No man, under the protection of the law, is to be the avenger of his own wrongs. If they are of such a nature for which the laws of society will give him an adequate remedy, thither he ought to resort, but be they of what nature soever, he ought to bear his lot with patience." Foster's Crown Law, 296. The defendant was not entitled to the instruction he requested the court to submit to the jury, and it follows that there was no error committed on the trial below. It will be so certified.

No Error.