## STATE v. ROBERT McDOWELL.

(Filed 11 December, 1907).

**1. Murder—Evidence—Premeditation—Question for Jury.**

The deceased, while on the train with L., had a difficulty with him and struck him. L. continued to curse the deceased, and the prisoner appeared to be intimately associated with L., to sympathize with him, and had evidently prepared to take his part, having pulled out his pistol, shifted it from one pocket to another to have it "more handy," and gone out on a platform to a station where the train stopped, looked at the cars and brandished his pistol. Thereafter, when he fired the fatal shot, he reached his arm over the shoulder of another person and snapped his pistol several times before it fired: *Held*, there was sufficient evidence of premeditation and deliberation to sustain a verdict of guilty of murder in the first degree.

**2. Same—Instructions—Evidence—Revenge.**

A prayer for special instructions embodying in part a correct proposition as to the findings of the jury on the question of murder, but also susceptible to the construction that, if the prisoner fired the fatal shot for revenge for the treatment his companion had received, it would only be murder in the second degree, is erroneous.

INDICTMENT for murder, tried before *Webb, J.,* and a jury, at Special Term, July, 1907, McDOWELL Superior Court.

The prisoner, Bob McDowell, was indicted for the murder of J. L. Millen and convicted of murder in the first degree. From the judgment and sentence of the Court the prisoner appealed.

*Assistant Attorney-General Clement* for the State.

*Pless & Winborne* for defendant.

BROWN, J. The prisoner introduced no testimony, and that admitted in behalf of the State tends to prove the following facts: The prisoner, with one Long and some others, were on the train, going *via* Vein Mountain to Marion. A difficulty occurred on the train between a party of negroes in the

second-class coach.    Millen, the flagman, went in and tried
to quiet them.    Long came up to Millen and asked what
authority he had to interfere with the fight.    Millen replied
that it was none of Long's business, and that it was his busi-
ness to quell disturbances.    Long thereupon cursed Millen,
and Millen hit Long with his fist.    Millen made Long sit
down and be quiet.    Millen then went back in the smoker,
and the prisoner got up, walked up the aisle to the baggage
car and changed his pistol from one pocket to another, came
back and said he did not allow any — — — — to run over
him, and sat down in the seat with Long.    Long all this time
was cursing Millen and saying that he wasn't going to be run
over and wasn't going to take that of anybody.    When the
train stopped at Vein Mountain the prisoner got out and
walked up and down the track, looking back at the train, with
his pistol in his hand.    Millen was not outside at that time,
but in the smoker.    When the train left Vein Mountain some
one told the conductor that there was disorderly conduct in
the second-class car; he walked up through the second-class
car to where the prisoner and Long were sitting.    The con-
ductor testified that the prisoner was sitting in the seat in
front of Long, but the other evidence seems to contradict this,
and it seems that the prisoner was sitting in the same seat with
Long, the prisoner being nearest the aisle.    Long was still
cursing Millen, when the conductor came up and said: "You
be quiet, or I will have to put you off."    Long replied: "I
don't allow any man to curse me like he did," and said he was
not going to "take it."    Millen came in and heard the remarks
of Long, and walked up to about two seats behind Long and
the prisoner, and asked Long if that was Long cursing him.
Long said "Yes," and Millen hit Long with his fists.    Long
jumped up and opened a knife, and Millen hit Long and
knocked him down.    Millen then stepped back about four
steps from where they were sitting, making him about four
seats away, and stood there, looking at the conductor attempt-

ing to hold Long in his seat. While Long was struggling with the conductor the prisoner jumped up and, turning around, faced the conductor, jerked his pistol out, threw his arm so his pistol extended over the conductor's right shoulder, snapped it once or twice, then fired it twice, hitting Millen in the left temple, killing him instantly. The conductor and one of the witnesses threw the prisoner down and tied him. When the prisoner shot deceased, the deceased was standing with his head turned to the right, looking at the conductor and Long, and was shot in the left temple.

The few exceptions to testimony appearing in the record, we find, upon examination, to be without merit and not of sufficient novelty or importance to warrant discussion.

The prisoner excepts to the refusal of the Court to instruct that there is no evidence of premeditation and deliberation, and, therefore, the jury could not convict of murder in the first degree. We think the jury were warranted in finding, from all the circumstances surrounding the homicide, that it was the result of preparation and premeditation upon the part of the prisoner. He and Long appeared to be intimately associated. When Long provoked the difficulty with the deceased, the prisoner evidently sympathized with his companion and prepared to take his part. He pulled out his pistol, shifted it from one pocket to another so as to have it "more handy"; went out on the platform at the station when the train stopped, looking at the cars and brandishing his pistol. When he fired the fatal shot, the prisoner reached his arm over the conductor's shoulder, or around his neck, and snapped his pistol several times before it would fire. There is no pretense of self-defense and nothing in the evidence tending to prove any personal injury to the prisoner sufficient to arouse such violent passion. From these circumstances the jury might well conclude that the prisoner slew the deceased on a principle of revenge for the fancied wrong to himself or his companion, which was trivial in its nature,

so far as the prisoner was concerned, and that he had deter-
mined to slay the deceased before he fired the fatal shot.
*State v. Johnson,* 47 N. C., 247; *State v. McCormac,* 116
N. C., 1034; *State v. Lipscomb,* 134 N. C., 694.   The evi-
.dence of preparation, deliberation and premeditation submit-
ted to the jury in this case appears to be equally as strong, if
not stronger, than that held to be sufficient in *State v. Daniel,*
139 N. C., 549; *State v. Hunt,* 134 N. C., 684; *State v.
Teachey,* 138 N. C., 587.

The conduct of the prisoner throughout indicates thought,
contrivance and design in the manner of securing and han-
dling his pistol prior to firing the fatal shot, and to such a
degree as manifests an exercise of judgment and deliberation
rather than unpremeditated and ungovernable passion.   *State
v. Daniel, supra.*   It is not necessary to conviction that the
State should prove express malice or motive.   The malice is
implied from the manner of the slaying, and the motive,
although unnecessary to be proven, is perfectly apparent from
all the evidence.   *State v. Adams,* 136 N. C., 617; *State v.
Wilcox,* 132 N. C., 1143; *State v. Turner,* 143 N. C., 642.

The prisoner excepts because the Court refused to give the
following instruction: "If defendant, upon the impulse of
the moment, or without having fully determined so to do
before, suddenly began shooting, or shot at the flagman be-
cause of the treatment which his companion was receiving, or
about to receive, it would be murder in the second degree."
The first score of words embodies a correct proposition of law.
The remaining part of the instruction is susceptible to the
construction that, if the prisoner fired the fatal shot in re-
venge for the treatment his companion had received, or was
receiving, it would be only murder in the second degree.   This
is erroneous.   Revenge implies malignity, retaliation, not
impulsive passion.

"May my hands
Never brandish more revengeful steel."

It indicates a deliberate and premeditated purpose. *State v. Daniel, supra.* A portion of the prayer being erroneous, the Court did not err in rejecting the whole.

We have examined the record with that careful scrutiny which cases of this gravity demand, and we find

No Error.