STATE v. WILLIAM T. McKENZIE.

(Filed 1 April, 1914.)

**1. Homicide—Motive—Evidence—Bad Blood.**

Upon a trial for murder, evidence is competent upon the question of motive for the crime, which tends to show ill-feeling of the prisoner towards the deceased, and the cause thereof; and where the deceased was the brother of the prisoner's deceased wife, it is competent to show that his wife's family, including the deceased, had charged the prisoner with having mistreated his wife.

**2. Homicide—Subsequent Circumstances—Evidence.**

Testimony of relevant circumstances immediately following the homicide, and which tends to show the guilt of the prisoner, is competent.

**3. Homicide—Evidence—Contradiction.**

Where on a trial for murder the prisoner's witness has been examined before the coroner and has made an affidavit before the clerk of the court, it is competent, for the purpose of contradiction, but not as substantive evidence, on cross-examination, to question him as to the statements he had thus theretofore made.

**4. Appeal and Error—Unanswered Questions—Exceptions.**

Exceptions to unanswered questions, without proper statement as to their relevancy to the subject-matter of the trial, will not be considered on appeal.

**5. Homicide—Evidence—Impeaching.**

Evidence that the witness for the prisoner on trial for homicide had stayed in the same cell with him on the previous night is competent for the purpose of impeaching the testimony of the witness.

**6. Homicide—Deadly Weapon—Malice Implied—Burden of Proof.**

The killing of deceased by the prisoner with a deadly weapon implies malice, which would sustain a conviction of murder in the second degree; the burden being upon the State to prove deliberation and premeditation for conviction for the greater offense of murder in the first degree, and upon the prisoner to show matters in defense to justify a less offense or acquittal.

**7. Homicide—Premeditation—Evidence.**

The evidence on this trial for homicide tends to show that on the day thereof the prisoner had quarreled with the deceased,

who was a brother of his deceased wife; he went to the place where the deceased worked, and spoke to him in abusive language; the prisoner fired upon the deceased, who was unarmed, five times with a pistol as they were walking towards each other, and then inflicted the fatal wound with a gun he was also carrying. *Held*, evidence of deliberation and premeditation sufficient to sustain a verdict of murder in the first degree.

8. Appeal and Error—Recitals in Exceptions.

Recitals in the appellant's exceptions not set out as a part of the statement of case on appeal settled by the judge will not be considered.

9. Same—Homicide—Trials—Prejudice.

Where the prisoner has appealed from a sentence of murder in the first degree, and as a part of his exceptions states that the wife of the deceased, with her children, attended the trial in mourning, and boarded at the same place with the jury, such recitations, if considered as a part of the case on appeal, will not alone be sufficient to set aside the sentence of the court.

APPEAL from *Lyon, J.*, at September Term, 1913, of ROBESON.

The defendant was indicted for the murder of one Peter D. Jones, in Scotland County, on 22 October, 1912. From a judgment rendered on a verdict of guilty of murder in the first degree, he appealed.

The prisoner was the brother-in-law of the deceased, and his wife died about ten days before the homicide. There was evidence tending to show ill-feeling between the prisoner and his wife's family on account of supposed ill-treatment of his wife by the prisoner. The youngest child of the prisoner had been taken by his wife's family to their home immediately upon her death and had been kept by them until the day of the homicide. About the middle of the day the prisoner went to the home of Mr. Sam Jones, the father of the deceased, at whose house the child was staying, and took the child away and to his father's house. There is testimony tending to show that while he was at his father-in-law's there were some words between the prisoner and the members of his wife's family, and there is also testimony tending to show that there had been a quarrel earlier in the day between the prisoner and the deceased. About 3 or 4 o'clock in the afternoon of the day of the homicide the deceased

and one Jake Bradley went to the woods to get a load of wood, and it was while they were there that the homicide was committed.

As to what occurred may properly be described in the language of Jake Bradley, who was a witness for the State. He testified in part:

"I was loading from the lower pile, about 25 yards from the road. As near as I can recollect, the time I started after the wood was between 3 and 4 o'clock in the afternoon. It was 22 October of last year. When I started for the wood on the wagon, my boy and Mr. Peter D. Jones went with me. My boy is 15 years old; Frank Bradley is his name. I met up with Mr. Jones at the Widow Jones', at his mail box on the side of the road. I spoke to him about the wood; he got on the wagon and went back to the woods with me. I got to the woods; I turned my wagon around up side the cord-wood pile and he sat down behind me and taken out his paper—newspaper. He commenced reading and I commenced loading my wagon, and I got my wagon just about level full and gets up on the wagon to level it down so I could put on more, and just as I got up on the wagon and moved a piece or two of wood I happened to look up; in the old road there was Mr. Willie McKenzie and a gentleman by the name of Ed. Ingram. They were on the old road; they were traveling both on the same buggy. They were headed toward Laurinburg. Mr. Will he drove up and said, 'How you, Pete?' and he said, 'How you, Will?' and he stepped out of the buggy backwards—Will McKenzie did—with a gun in his right hand—a breech-loader. I think it was a double; and he says, 'Peter, when you cursed me I had nothing,' and he said, 'You are a damn black son of a bitch.' Mr. Peter got up, and he sticks the paper in his coat pocket and says, 'Yes, Will, you come to these woods to raise a row with me, and sure as you do you will pay for it.' They then commenced walking toward one another, and Mr. Will was cursing and Mr. Peter was shaking his finger, and says: 'You may raise a row, but I will see that you pay for it.' He was shaking his left hand. They were about 15 or 20 steps apart at that time, as near as I can come at it. When he was

STATE v. McKENZIE.

shaking his finger at Mr. Will, Mr. Will changed the gun in this hand and takes out the pistol. He got the pistol back there where people always totes them. He shoots the pistol twice, and Mr. Peter stopped. He looked like he was shooting at Mr. Peter. And they made a step toward each other, and he shoots twice again, and they kept on until they got about 10 or 15 steps apart; he shot again one time with the pistol, and he threw it down, and he throwed it down, and about that time Mr. Peter made another step or two, and he changed hands with the gun into the right hand and shot it. Mr. Will shot with the gun. He was shooting after Mr. Peter. When he shot the gun, Mr. Peter fell."

Jake Bradley, this witness, further testified that deceased did not have anything in his hands, and that the prisoner came in a buggy as if he were coming from his father's house, and after the shooting got into the buggy, turned around, and went back in the same direction.

The coroner, J. R. Jordan, testified that the load of shot entered the left breast and came out just a little on the right side of the backbone. A closed knife was found in the right pants pocket, but there was no pistol or any weapon of any kind on the body. Other witnesses testified to the same facts.

*Attorney-General Bickett and Assistant Attorney-General Calvert, McIntyre, Lawrence & Proctor, Russell & Weatherspoon for the State.*

*McLean, Varser & McLean, Cox & Dunn, E. H. Gibson, and W. H. Neal for defendant.*

CLARK, C. J. Exceptions 1, 2, 3, 4, 5, 6, and 7 are to the admission of testimony to show the feelings of the prisoner towards the family of his deceased wife, whose brother he slew, by reason of their allegations of ill-treatment of his wife by prisoner, and their feeling towards him, as tending to show motive for the crime. Evidence of former difficulties between the defendant and the deceased and the state of feelings between them is admissible on a trial for homicide, and it is also proper

to introduce evidence tending to show the cause of such difficulties and ill-feeling. 21 Cyc., 915; Wharton Cr. Ev., 898; *S. v. Tweed,* 152 N. C., 843.

Exceptions 8, 9, 10, and 11 are to the admission of the testimony of the widow of the deceased, that she saw the prisoner pass her house shortly after she heard the gun fired in the direction of the homicide, the distance from the house to the place where her husband was killed, the time he passed, and that the horse was in a lather and foaming in the harness. This was properly admitted as a recital of the circumstances immediately following the homicide.

Exceptions 12 and 25 from the refusal to nonsuit as to murder in the first degree cannot be sustained. There was evidence of premeditation and deliberation to be submitted to the jury. *S. v. McDowell,* 145 N. C., 563; *S. v. Banks,* 143 N. C., 652; *S. v. Teachey,* 138 N. C., 598.

Exceptions 13, 14, 15, 16, 17, 18, and 19 are to the cross-examination of Ed. Ingram, a witness for the prisoner, who was with him when he went to the woods and killed the deceased. This witness had testified before the coroner and had made an affidavit before the clerk of the Superior Court. Upon cross-examination the court overruled the objections to the questions asked him as to what he swore in the affidavit before the clerk of the court. The court instructed the jury that the questions asked him as to what he testified before the coroner and the clerk were not substantive testimony, but were competent to contradict the witness's testimony given on the trial, and that the jury would not consider it as substantive testimony. *S. v. Jordan,* 110 N. C., 491.

Exceptions 20, 21, and 22 need not be considered, as there was no answer given to the questions asked. Exception 23 must be overruled, as the question admitted, whether the prisoner and the witness had stayed together the previous night in the same cell, was competent as tending to impeach the witness.

Exception 34 was to the admission in evidence of the affidavit of the witness Ingram taken before the clerk of the court, which was admitted to contradict him, and was competent.

The exceptions to the charge are numerous, but require no discussion, as they present no new point, and the charge conforms to the settled precedents. The court properly charged that malice is implied from the slaying with a deadly weapon, and that, nothing else appearing, the prisoner would be guilty of murder in the second degree. That to raise the offense to murder in the first degree the burden was upon the State to prove deliberation and premeditation, and that to reduce the offense to a lower degree, matter of excuse or mitigation was upon the prisoner, as was also matter in defense that would justify a verdict of not guilty, but upon the whole case the jury must find the prisoner guilty of the offense, if any, found by their verdict.

We have examined with care all the exceptions, with the aid of the earnest and forcible arguments of the learned counsel for the prisoner, and do not find that he has suffered any prejudice in the investigation of the charge against him. Upon the evidence it seems to have been a deliberate and premeditated slaying, caused by ill-feeling of the prisoner against the deceased. The prisoner had had some words with members of his wife's family, and earlier in the day had a quarrel with the deceased, who was his deceased wife's brother. The prisoner armed himself with a double-barrel breech-loading gun and with a pistol, and rode in a buggy some distance into the woods where the deceased was at work, and approached him with a most opprobrious epithet. When the deceased rose and they walked towards each other, the deceased being entirely unarmed, the prisoner fired at him with a pistol five times, having changed his gun to his left hand. He then threw the pistol down and, taking the gun into his right hand, shot with it and killed the deceased.

The deceased had no weapon of any kind and a closed knife was found in his right-hand pants pocket. It can hardly be necessary to discuss the facts further.

The prisoner's counsel also filed exceptions that during the trial the widow of the deceased, dressed in mourning, with a

child in her arms and four other small children, was permitted repeatedly to come into the courtroom; that during the progress of the trial they were permitted to associate with the jury at the same boarding-house, and that the bloody clothes with the bullet holes were left in the jury room in view of the jury while they were deliberating upon the case. These allegations are not set out by the judge in his statement of the case on appeal, nor are they found as facts by him. They are merely recitals of the prisoner in his exceptions. This Court has repeatedly stated that such recitals cannot be considered by us, for if recitals of fact in exceptions filed by the appellant, which are his own act, can be considered, a reversal in every case would be simply a matter of course. *S. v. Dixon,* 131 N. C., 812; *Patterson v. Mills,* 121 N. C., 268; *Merrill v. Whitmore,* 110 N. C., 367; *Walker v. Scott,* 106 N. C., 56.

But if we take the facts in these recitals as true, they do not entitle the prisoner to a new trial. It was admissible for the widow to be present at the trial with her children. It may have been a subject of criticism if she had not worn mourning. There is no finding by the judge, and even the prisoner's recital of facts do not set forth, that such conduct on her part swayed the jury. We have to presume that they were intelligent men and knew that they were trying the case upon the evidence and the charge of the court. It was stated before us by counsel on both sides that in fact the bloody clothes were in a box and not in sight of the jury, except when they were exhibited in evidence, and while the exception recited that the widow and children associated with the jury at the boarding-house, it appears by the statement of counsel that they simply boarded at the same place, which was the only hotel in town, and there is no evidence or intimation that in fact the widow or her small children conversed with the jury or attempted to influence them, and indeed the jury were doubtless under the supervision of an officer and were kept together. If there was in fact any attempt to influence the jury, this should have been presented to the court by affidavit, and the judge should have found that fact and that they were influenced.

In *S. v. Tilghman,* 33 N. C., 513, the Court held that "where the circumstances are such as to show, not that there was, but that there might have been, undue influence brought to bear on the jury, because there was opportunity and a chance for it, the matter rests in the discretion of the trial judge." This case has been repeatedly cited since. See the numerous citations in the Anno. Ed. Among many other cases, in *S. v. Dixon,* 131 N. C., 813, it is said: "It is not enough that there was opportunity, but the court must find that in fact the jury were prejudiced in such matters. *S. v. Tilghman,* 33 N. C., 513."

In *Willeford v. Bailey,* 132 N. C., 408, it is said: "It must affirmatively appear that undue or improper influence has affected the verdict," citing *S. v. Tilghman, supra,* and *S. v. Brittain,* 89 N. C., 481.

In *S. v. Boggan,* 133 N. C., 766, the Court cites from *S. v. Tilghman, supra,* that there must not only be opportunity and a chance for undue and improper influence, but it must be shown to have been exerted. That case further cites from *S. v. Crane,* 110 N. C., 530: "When it appears only that there was an opportunity whereby to influence the jury, but not that the jury was influenced—merely opportunity and chance for it—a new trial is in the discretion of the presiding judge," citing *S. v. Miller,* 18 N. C., 500.

In *S. v. Boggan, supra, Connor, J.,* also cites *Justice Ashe* in *S. v. Gould,* 90 N. C., 658, a capital felony: "Even if the circumstances had been such as to show that there was an opportunity and chance for exerting influence upon the jury, it would have been a matter of discretion with the presiding judge whether he would have granted a new trial," and *Judge Connor* adds: "The presumption is in favor of the integrity of the jury and their verdict, that they tried the case upon the law and evidence. If it is sought to impeach the verdict, the burden is upon the prisoner either to show that they were improperly influenced or that their conduct was such that as a matter of law there had been no trial."

In *Abernathy v. Yount,* 138 N. C., 340, *Connor, J.,* quotes *S. v. Tilghman* on this point, and says that this ruling "has

been uniformly adopted and followed by this Court." This ruling was again cited with approval in *S. v. Exum,* 138 N. C., 606, and in other cases since.

Upon a careful review of the entire case and of all the exceptions we find

No error.