### STATE v. CHARLES WALKER.

(Filed 9 May, 1917.)

**1. Homicide—Murder—Premeditation.**

The killing of a human being after the fixed purpose to do so has been formed, for however short a time, is sufficient for the conviction of murder in the first degree.

**2. Same—Evidence.**

> The premeditation or fixed purpose to kill a human being may be shown
> by the surrounding circumstances; as where the deceased and prisoner
> were sweethearts, and as a result of a lovers' quarrel in the morning the
> deceased broke off her engagement, refusing to go with the prisoner
> again, and in the afternoon the prisoner met her, repeatedly urged her
> to go with him, which she refused to do, and after following her three-
> fourths of a mile she began to run, refusing to stop at his command,
> whereupon, at a secluded place, he drew his pistol from his pocket and
> fired three times, at the last of which she fell, and death resulted.

INDICTMENT for murder, tried at November Term, 1916, of CALD-
WELL, before *Ferguson, J.*

The prisoner was convicted of murder in the first degree and from
the sentence of death appeals to the Supreme Court.

*Attorney-General Manning and Assistant Attorney-General Sykes for
the State.*

*M. N. Harshaw and J. H. Burke for the prisoner.*

BROWN, J. The only question presented upon this appeal is to the
sufficiency of the proof that the homicide of which the defendant was
convicted was premeditated and whether the evidence is sufficient to
show that degree of deliberation and premeditation necessary to consti-
tute murder in the first degree. All the evidence tends to prove that the
prisoner and the deceased, Florence Sutphin, were cousins and sweet-
hearts; that at one time they had been engaged to be married and had
been a great deal in each other's company for some months preceding
the homicide. A number of letters are in evidence, from one of which
it appears that a few days before the homicide the deceased wrote the
prisoner declaring that she would not marry him, and terminating the
engagement.

On Sunday, 1 October, 1916, the day of the homicide, the prisoner
went to the home of the deceased between 7 and 8 o'clock in the morn-
ing. At that time they had a lovers' quarrel and the deceased told the
prisoner that she would not go with him any more. Between 1 and 2
o'clock of that day the deceased left her home to visit at Mr. Hagler's.
According to the testimony of Glennie Martin and Willie Martin, who
went with the deceased, they met the prisoner on the way. He spoke to
the deceased and asked if he could go with her. On being refused, he
took hold of her arm and said: "Come on, Florence." She replied:
"Charlie, I am not going with you." The deceased and her two com-
panions walked on, the prisoner following. The prisoner again directed
the deceased to stop, and they had some conversation about a watch.

He demanded that she tell him the reason why she refused to go with him any more, and she replied that she did not have any reason. The testimony is that the party walked on and the prisoner carried his right hand in his hip pocket all the time. The girls started to run and the prisoner ran after them, crying out to the deceased: "Florence, I say do not run!" She replied: "You have not got anything to do with me, and I will run if I want to." The prisoner said: "Florence, I say do not run!" The girls walked a few steps and the prisoner fired three shots at the deceased, who fell at the third shot. After firing the third shot, the prisoner turned and ran. Where he shot the deceased was the darkest place in the woods. The testimony is that he met up with the girls in an open place and followed them three-quarters of a mile.

Upon searching the person of the prisoner, the sheriff found a knife and a pistol in his pocket. The defendant through his counsel admitted that he fired the shot that killed the deceased.

We are of opinion that there is abundant evidence in this record tending to prove that the prisoner killed the deceased deliberately and premeditatedly. The numerous cases in our own reports upon this subject all declare that when the purpose or design to kill is formed with deliberation and premediation, it is not necessary that such purpose or design shall be formed any definite length of time before the killing. No particular time is required for this process of premeditation or deliberation. When a fixed purpose to kill is deliberately formed, it is immaterial how long after that the purpose to kill is put into execution. It is as much a deliberate and willful murder if it is committed within five minutes after the fixed design and purpose to kill is formed as it would be five hours. S. v. Teachey, 138 N. C., 598; S. v. Spivey, 132 N. C., 989; S. v. Daniel, 139 N. C., 552; S. v. Lipscomb, 134 N. C., 694.

This premeditation and deliberation, like any other fact, may be shown by circumstances, and in determining as to whether there was such premeditation and deliberation the jury may consider the entire absence of provocation and all the circumstances under which the homicide is committed. S. v. Roberson, 150 N. C., 837; Carr on Homicide, sec. 72.

If the circumstances show a formed design to take the life of the deceased, the crime is murder in the first degree. This subject is so fully discussed in the many cases in our reports that it is useless to pursue the matter further.

No error.