STATE v. A. A. MILLS.

(Filed 8 November, 1922.)

**Witnesses — Character — Knowledge — Intoxicating Liquor— Spirituous Liquor—Evidence—Hearsay Evidence.**

Before a witness may testify to the bad character of the defendant on trial for the unlawful sale of liquor, he must qualify himself by first saying under oath that he knows what such character is, before giving the information he has received thereon from others, and thus prevent a conviction by rumors that were mere hearsay declarations on the principal question of guilt or innocence; and an admission of testimony, in behalf of the State, that all the witness could say was what people had said to him, that the defendant was a man who handled liquor, is reversible error, when unsupported by the sworn testimony by the witness of his own knowledge of the defendant's bad character.

CLARK, C. J., dissenting.

APPEAL by defendant from *Cranmer, J.,* at February Term, 1922, of GREENE.

Criminal action for the unlawful sale of intoxicating liquors. There was evidence on the part of the State tending to show that in September, 1921, E. H. Sugg *et al.,* officers in the Revenue Department of the State, under a proper warrant, made search of defendant's premises at and in said county, and found there several empty jugs and bottles, all having the odor of corn whiskey, and they also found between the kitchen and smoke-house, hidden in some weeds, a two-gallon jug with about one gallon of corn whiskey in it, etc.

For the defendant the evidence tended to show that defendant was not on the premises at the time, having gone to Kinston to sell his tobacco crop. Defendant himself testifying as a witness denied that he had any whiskey on his premises, or that he had any interest therein. He further testified that he had several hands working his farm, and one of these, Jones Forbes, had a room in defendant's house. That on

the Saturday night before Forbes had procured a gallon of whiskey, which he had on the premises, and witness having found this out, remonstrated with Forbes. There was a quarrel between them about it, and witness discharged Forbes. There were no bottles or other vessels on witness's place having the odor of whiskey that witness knew anything about. Several witnesses testified to the good character of the defendant.

In reply, the State introduced, as a witness, Sheriff Herring, who testified as follows:

Sheriff Herring, for the State: "I know the defendant Mills.

"Q. What is his general reputation? A. All I can tell you is the report to me what people said to me.

"To the foregoing answer defendant objects; objection overruled; defendant duly excepted. Exception No. 6.

"Q. Prior to the time he was arrested? A. He was reported to me as a man handling liquor."

Objected to and exception taken. There was verdict of guilty, judgment, and defendant excepted and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. Paul Frizzelle and H. L. Swain for defendant.*

HOKE, J. It is fully recognized that in the trial of causes the testimony of a witness may be impeached by evidence of his bad character, and it is equally well established that before this is allowed the impeaching witness must qualify himself by saying under oath that he knows what such character is. This is not at all a meaningless position, but under some of the more recent rulings as to the examination of witnesses its proper enforcement is at times necessary to prevent a conviction by rumors that are mere hearsay declarations on the principal question of guilt or innocence.

In *S. v. Parks,* 25 N. C., 296, *Judge Gaston* speaks most impressively on the subject as follows: "It is essential to the uniform administration of justice, which is one of the best securities for its faithful administration, that the rules of evidence should be steadily observed. Among these, the rule which regulates the admission of testimony offered to impeach the character of a witness is now so well established and so clearly defined that a departure from it must be regarded as a violation of law. The witness is not to be discredited, because of the opinions which any person or any number of persons may have expressed to his disadvantage, unless such opinions have created or indicate a *general reputation* of his want of moral principle. The impeaching witness

must, therefore, profess to know the general reputation of the witness sought to be discredited, before he can be heard to speak of his own opinion or of the opinions of others, as to the reliance to be placed on the testimony of the impeached witness."

And in *S. v. Coley,* 114 N. C., 879, *Avery, J.,* delivering the opinion, said: "No principle of evidence is more clearly settled in North Carolina, nor by a longer line of decisions than that a witness will not be allowed to testify as to character until he shall have first qualified himself by stating that he knows the reputation of the person in question." And many other decisions on the subject are to the same effect.  *S. v. Ussery,* 118 N. C., 1177; *S. v. Gee,* 92 N. C., 756; *S. v. Speight,* 69 N. C., 72; *S. v. Perkins,* 66 N. C., 126.

Recurring to the record, we do not think that the exceptions noted can be brought within the principle or meaning of these decisions. Sheriff Herring at no time professes to know the character of the impeached witness.  "All I can tell you is the report to me, what people said to me"; and further, "He was reported to me as a man handling liquor."  Whether these reports were from few or many people, and whether from one or the other, they had had the effect of creating a settled and general estimate adverse to the character of the witness in no way appears.  The entire statement creates the impression rather that the witness is giving the effect of rumors born of the present charge, and not the general reputation of the impeached witness in the community, the only kind of evidence that is competent in such an inquiry.

The cases of *S. v. Butler,* 177 N. C., 585, and *S. v. Cathey,* 170 N. C., 794, are not in contravention of this decision.  In both, the witnesses had first qualified himself by saying that he knew the general character of the impeached witness, and was then allowed to say what it was, thus bringing themselves within the rules of well ordered procedure, as approved in the cases referred to.

There are other objections to the validity of this conviction that are worthy of grave consideration, but as they may not appear on a second trial, they are not more fully adverted to.

For the error indicated, defendant, in our opinion, is entitled to a new trial, and it is so ordered.

New trial.

CLARK, C. J., dissenting: The defendant was convicted in the county court of Lenoir of having in possession liquor for the purpose of sale, and on appeal was again convicted by a jury in the Superior Court.  It was in evidence for the State that in September, 1921, in consequence of information received, the four officers named were sent with a search warrant to the premises of the defendant, a colored man living out in

the country. When they arrived, he was absent, and they read the search warrant to his wife, who was in charge of the premises during her husband's absence, and who told them to go ahead and search. Between the kitchen and the smoke-house they found a two-gallon jug with over one gallon of corn whiskey. This was hid in dog fennel. Besides this, they found other jugs and bottles empty, but smelling of whiskey. Upon the officers finding the whiskey, the wife of the defendant ran into the house for a gun. The officer told her if she picked up a gun she would never lay it down. He says she stayed there, and mouthed and called him a right ugly name; she came outside and got a cart-round and waved it around like she was going to hit him; he told her he would slap her down and she dropped that and ran and got a pitchfork; he told her she had better not try to hit him with that pitchfork, and while he was there keeping her down, the other officers were searching the premises. The defendant on his cross-examination was asked about the resistance to the officers by his wife, "What was your wife raising such a storm about, if there was no liquor there?" to which he replied, "She did not raise as much as Mr. Sugg says she did; she tells me she did not, and others say so." Again he was asked, "She got the gun, and then went and got a pitchfork?" This was objected to, but it does not appear what the answer would have been. The defendant's counsel claims that her actions and statements, under the circumstances, in the absence of her husband, were *res inter alios acta* as to him, and consequently inadmissible.

The defendant also excepted that in reply to evidence introduced by the defendant as to his good character the sheriff was asked by the State, "What is the defendant's general reputation?" he answered, "All I can tell you is the report to me; he was reported to me as a man handling liquor." To the foregoing answer the defendant objected. The sheriff was then asked, "Prior to the time he was arrested?" and replied, "He was reported to me as a man handling liquor." To the foregoing question and answer the defendant excepted.

The defendant excepted to the evidence as to the conduct of his wife, who was left in sole charge of the house during the defendant's absence. The charge is not against the wife, but against the husband, and her conduct was a circumstance to be taken in connection with the liquor found upon her premises, as it proves *prima facie* that it was in his possession, and in the defendant's evidence; he did not deny she was there as his representative. The quantity of liquor found, more than one gallon, was *prima facie* evidence of its possession for the purpose of sale, which presumption is strengthened by the fact that seven other jugs were found hidden about the premises. She was in possession of the premises, for when the officers arrived she welcomed them and told

them they were welcome to search the premises. She said, "Go ahead, there is no whiskey here," but when the officers started to search the premises she ran and got a gun and threatened to shoot one of the officers. As long as the officers stayed in the house she was very quiet, but when they went back of the house and found the two-gallon jug with whiskey in it, she became excited and began to threaten the officers. The gallon of whiskey and 7 jugs were found in the weeds, and the officers also found "about a cart-load" of empty coca-cola bottles which smelt of whiskey. This conduct was certainly competent upon many precedents in this Court.

The wife here was not testifying against the husband, nor can her statements be excluded on the ground of confidential communications from her husband. The acts of the agent of the husband in possession of the premises where the whiskey was found do not present the case of a wife testifying against her husband, but were simply a part of the *res gestæ.*

The wife admitted that she was in charge of the premises for her husband by first telling the officers that they could go through and examine for any liquor, denying that there was any. Her consequent conduct was simply a part of the *res gestæ.* In *S. v. Crouse,* 182 N. C., 836, *Adams, J.,* recites as one of the pregnant evidences of guilt, and which was pressed in the brief for the State, that "After the two officers had gone to the defendant's house, they saw the defendant's wife go into her room and put under the bed a fruit jar which contained more than a quart of whiskey, while another found a small quantity in the cellar." In that case, as in this, the defendant himself was absent from home, and in that case, as in this, as the opinion states: "There was evidence tending to show that the defendant's character was bad as to the manufacture of liquor, and there are various other circumstances tending to show his guilt." In this case there was conclusive evidence, irrespective of these circumstances, by actually finding more than a gallon of liquor and the empty jugs and bottles smelling of liquor.

In *S. v. Simons,* 178 N. C., 679, there was evidence that the defendant on another occasion when arrested had first denied having whiskey, and then had resisted the officer. The evidence here is simply a part of the *res gestæ,* and competent. The conduct of those in charge on such search is not only competent against the owners, but would justify an indictment against them individually as accessories. *S. v. Killian,* 178 N. C., 753, 758.

The only other exception is because the sheriff in testifying to the character of the defendant, having said in reply to a question as to his general reputation: "All I can tell you is the report to me; what people said to me" (which is evidence of general character), adding, of

his own motion, "He was reported to me as a man handling liquor." This was not in reply to the question asked him, but a voluntary addition to his testimony. It has often been held that this would not vitiate the trial.

While a witness cannot be asked as to any particular trait of character on a matter of general reputation, it is competent for him to add, as in this case, of his own motion, a qualification to a general statement. In *S. v. Butler,* 177 N. C., 585, the subject is fully discussed, and it is thus said: "Where the character of the defendant, on trial for violating the statute against the sale of spirituous liquor, is in evidence a witness, who has testified that he knows the general character of the defendant, may voluntarily, and in order to speak the truth, testify in answer to a proper question that the defendant's character for selling whiskey is bad." In that case, quoting *Hoke, J.,* in *S. v. Summers,* 173 N. C., 780, it is said: "Objection is also made that the court refused to strike out the answer of certain other witnesses as to the character, who, after saying they knew the character of defendant, qualified their further answer by saying in what respect it was bad. It is the accepted rule that a witness may do this of his own volition, and these exceptions also must be disallowed. *Edwards v. Price,* 162 N. C., 245; *S. v. Hairston,* 121 N. C., 582."

The Court, in *S. v. Butler, supra,* also cited *S. v. Cathey,* 170 N. C., 794, where the sheriff, in replying to the question as to the general reputation of the defendant, said exactly as in this case, "It is bad for dealing in liquor." The Court held, *Allen, J.,* that this was no error.

The defendant put his character in evidence, both by going on the witness stand himself and by putting up six witnesses who testified to his good character. The State put up only one witness to character, the sheriff, who qualified himself by saying he knew what was reported to him, adding of his own volition, "He was reported to me as a man handling liquor." This was not error, *Hoke, J.,* in *S. v. Summers,* 173 N. C., at p. 780, citing *Edwards v. Price,* 162 N. C., 245; *S. v. Hairston,* 121 N. C., 582, which have been approved since by *Allen, J.,* in *S. v. Cathey,* 170 N. C., 794, and in *S. v. Butler,* 177 N. C., 586.

The issue in this case is not the character of the defendant, but the charge in the bill of indictment. The evidence was unquestionably sufficient to be submitted to a jury, *Walker, J.,* in *S. v. Alston,* 183 N. C., 735, and it convinced them. In *Edwards v. Price,* 162 N. C., 245, and other cases, this Court has deprecated giving too much stress to minute debates as to examinations as to character, both as tending to divert the attention of the jury from the real issue and because of the needless lengthening of trials. Here the defendant put on six character witnesses, and he was certainly not prejudiced by the witness for the

State who, instead of saying the defendant's character was bad, conscientiously restricted his testimony (as he had a right to do according to all the authorities) by saying it was bad "for handling liquor"—as in *S. v. Crouse, Adams, J.,* 182 N. C., at p. 836.

Upon the argument here, and on the evidence in the record, the real objection it seems was not that the defendant was not legally tried and properly convicted—indeed, could the jury have possibly done otherwise if they believed the evidence of the four officers, of which the jury were the sole judges—of finding the whiskey. The real complaint of the defendant, who was twice convicted, both in the county court and in the Superior Court on appeal, seems to be that the judge sentenced him to 15 months on the county roads.

Apparently the defendant was a serious offender, for four officers (one of them a detective sent down from the State Capital) were sent out to arrest him, and they found not only over a gallon of whiskey, but ample evidence, if believed, in numerous jugs and bottles, of long-continued violation of the law; he was convicted both in the county court and on appeal in the Superior Court, and the presumption is that the learned judge, in fixing the sentence, had, as usually is the case with judges in fixing the sentence, in considering the record of the defendant as a law-breaker. But if (of which there is neither presumption nor evidence) the judge was too severe, the remedy of the defendant is by application to the executive department.

Besides, the presiding judge had probably read the public policy of the courts, calculated to suppress this crime, as stated in *S. v. Butler,* 177 N. C., at p. 586, as follows: "The ruling of the judge is so well sustained upon reason and the authorities that doubtless the real ground of the appeal was objection to undergoing the sentence upon the public roads for eight months. The violation of law in selling intoxicating liquors is deliberate, not impulsive, as is the case in regard to many offenses, and the motive is the large profits accruing from the contemptuous violation of the law. The imposition of fines in such cases in practice amounts to granting license by the courts upon payment by the culprit of a very small part of the illegal profits obtained. The law authorized the sentence imposed of imprisonment with leave to work upon the public roads.

"Certainly the taking back by the State of a part of the profits made by violation of its laws can never repress the evil which is the object of the trial and punishment. In fact, it puts the State in the more than questionable attitude of sharing with the criminal the profits derived from the deliberate violation of its own laws, and it is thus in effect a partner suing for a share in the proceeds of the illegal business. The fines imposed always give the State a very minor share in the illicit

receipts. This is not the object to be sought by the courts. Such sentences should be imposed as will prevent the repetition of the offense by the defendant, and all others offending in like manner."

It is true that the orthodox technical examination of a character witness should be: "Do you know the character of A. B. ?" to which he should answer "Yes" or "No," as the case may be. If he answers "No," that ends it, but in 9 cases out of 10 the untechnical witness, if he knows the character, will answer, as the sheriff did in this case, stating that he knows what people say of him and what that is. The defendant certainly, in this case, was not prejudiced thereby, and in view of the evidence by the four officers of their finding the liquor, and the defendant having his character testified to by six witnesses in his own behalf, there has been no such error committed that the verdict of two juries should be set aside upon such technicality.