### STATE v. JOHN MACON.

(Filed 19 March, 1930.)

**1. Homicide B a—Evidence of premeditation and deliberation held sufficient to be submitted to the jury.**

Where in a prosecution for murder there is evidence tending to show that the defendant knew that he was wanted by officers of the law and that the deceased, in company with other officers, inquired for the defendant at the house where he was staying and were told that the defendant was at the barn when in fact he was in the house, and that the defendant stepped out of the house, saw the officers, went back into the house and fired the fatal shot with a pistol from a crack in the door, with evidence to the contrary that he did not shoot until he had been shot at by the officers while he was attempting to escape: *Held*, the evidence of premeditation and deliberation was sufficient to be submitted to the jury, C. S., 4200, and the refusal to give the defendant's prayer for an instruction that he could not be found guilty of murder in the first degree was not error.   C. S., 565.

**2. Homicide E a—Where evidence shows that defendant shot before knowing of deceased's purpose to arrest him, lawfulness of arrest is immaterial.**

Where the defendant in a prosecution for murder contends that he shot the deceased in self-defense after the deceased had wounded him while attempting to arrest him without a warrant, and all the evidence tends to show that the defendant shot the deceased before the deceased or any of his companions had informed him of their purpose to arrest him; that neither the deceased nor any of his companions had attempted to arrest the defendant prior to that time, and there is evidence that the defendant shot after premeditation and deliberation: *Held*, it was immaterial that the officers had no warrant for the defendant's arrest, and the refusal to instruct the jury as to the lawfulness of the arrest was not error, and *held further*, there was ample evidence that the officers had reasonable grounds for arresting the defendant without a warrant, C. S., 4544, and an instruction that the jury might find the defendant guilty of murder in the first or second degree, or of manslaughter, or acquit him, was not error.

APPEAL by defendant from *Small, J.*, at September Term, 1929, of WARREN. No error.

This is a criminal action in which the defendant was tried on an indictment for murder. There was a verdict that defendant is guilty of murder in the first degree.

From judgment on the verdict that defendant suffer death by means of electrocution, as provided by statute, C. S., 4658, defendant appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*No counsel for defendant.*

CONNOR, J. On 3 May, 1929, at the home of Baldy Mitchell, in Warren County, North Carolina, the defendant shot and killed Sam Pinnell. Deceased was shot in the morning at about 8 o'clock; he died that night at about 11 o'clock.

The evidence for the State tended to show that defendant was in the house at the time he fired his pistol at the deceased; that he opened the door, saw deceased standing a short distance from the house, and stepped back into the house; and that he then cracked the door, and fired his pistol at the deceased, thereby inflicting the fatal wound. Defendant then came out of the house, when he and the deceased, who was armed with a shot gun, exchanged several shots at each other. There was conflict in the evidence as to whether defendant was wounded by the shot fired by the deceased. Defendant attempted to escape, but was wounded by companions of the deceased, who thereafter arrested him.

There was evidence for the defendant tending to show that he did not fire his pistol at the deceased until after he came out of the house and until after the deceased had fired at him with his shot gun. Defendant contended that he killed the deceased in self-defense, or at most without deliberation and premeditation.

The deceased, Sam Pinnell, accompanied by his brother, Robert Pinnell, a deputy sheriff of Warren County, Walter Mustian, also a deputy sheriff of said county, and his brother, E. H. Pinnell, had gone to the home of Baldy Mitchell early on the morning of 3 May, 1929, for the purpose of arresting defendant, at the request of the sheriff of Franklin County, North Carolina. Robert Pinnell, who had been a deputy sheriff of Warren County for several years, had been informed by the sheriff of Franklin County that defendant, in 1912, had killed James Sherrod, in Franklin County, and that he had fled from said county and had remained away therefrom for the purpose of avoiding arrest on a charge of murder.

Defendant had been in Warren County only a few weeks and at the home of Baldy Mitchell only a few days. Sam Pinnell and his brother, E. H. Pinnell, were summoned by their brother, Robert Pinnell, to go with him and the other deputy sheriff to aid in the arrest of the defendant. Neither of them had a warrant for the arrest of the defendant. They were acting at the request of the sheriff of Franklin County and relied upon the information given them by the said sheriff. When they arrived at the home of Baldy Mitchell, where they had reason to believe they would find the defendant, they inquired of his wife, Bessie Mitchell, if defendant was there. She told them that defendant was at the barn, some distance from the house. Defendant was, in fact, in the house at the time the inquiry was made and there was evidence tending to show that he heard the inquiry made of Bessie Mitchell and also heard her reply. There was no evidence tending to show that at this time, either of the officers told Bessie Mitchell why they were inquiring for the defendant, or for what purpose they had come to her home.

The defendant testified that he knew he was wanted in Franklin County to answer the charge that he had murdered James Sherrod, and that he suspected that the men who inquired of ·Bessie Mitchell, if he was at her home, were officers and that they were seeking to arrest him. He testified further: "When the officers came there that morning, I did not know whether they were after me or not. I knew I was wanted for murder. I was sitting in the room with Bessie Mitchell and her daughter. I had my pistol in its holster strapped around my waist. I did not hear the officers asking anything. I went to the back door when the men came because I was going out that way. I was not running away until I got out of the house. I did not see the men before I got out

of the house. I did not open the door and see Mr. Pinnell and then shut the door and shoot through a crack. When I went out he had gone twenty-five or thirty steps from the house, somebody ordered me to halt, but I ran because I knew I was wanted. I thought it was somebody after me to arrest me for murder in Franklin County, and I tried to get away. When somebody ordered me to halt, I knew it was officers who wanted me in Franklin County for killing James Sherrod. I saw Mr. Pinnell after I ran out into the yard. I was shot in the back before I fired. I turned and shot Mr. Pinnell, as I was running away. I kept going until I fell." There was evidence tending to show that after defendant had shot and fatally wounded Sam Pinnell, he was shot and wounded by the other officers.

Defendant admitted that he had shot and killed James Sherrod, in Franklin County, and that he had fled from said county to avoid arrest on a charge of murder. He testified that the killing of Sherrod was accidental.

There was evidence that the general character of defendant is bad; there was no evidence to the contrary.

The court instructed the jury that they should return a verdict that the defendant is guilty of murder in the first degree, or of murder in the second degree, or of manslaughter, or that defendant is not guilty, as they should find the facts to be from all the evidence. The contentions of both the State and the defendant as to the facts and as to the law, were fully and fairly stated in the charge to the jury. There was no exception to the charge as given as to the law applicable to the facts as the jury might find them to be from the evidence.

The only assignments of error on defendant's appeal to this Court are based on his exceptions to the refusal of the court to instruct the jury in accordance with his requests in writing, made in apt time. C. S., 565. Neither of these assignments of error can be sustained.

There was evidence from which the jury could find not only that defendant is guilty of murder, but also that the murder was committed after deliberation and premeditation, and that therefore the defendant is guilty of murder in the first degree. C. S., 4200. *S. v. Miller,* 197 N. C., 445, 149 S. E., 590; *S. v. Walker,* 173 N. C., 780, 92 S. E., 327. This evidence was submitted to the jury under instructions which are in accord with authoritative decisions of this Court. *S. v. Newsome,* 195 N. C., 552, 143 S. E., 187; *S. v. Walker,* 193 N. C., 489, 137 S. E., 429.

All the evidence for the State tends to show that neither the deceased nor any of his companions had attempted to arrest the defendant, prior to the time defendant fired his pistol at the deceased and thereby inflicted the fatal wound. It was therefore immaterial that they had no warrant for his arrest. Defendant shot and killed the deceased before he or any of his companions had informed him of their purpose to arrest

him on a charge of murder. There was therefore no error in the refusal of the court to instruct the jury as to the lawfulness of an arrest of the defendant without a warrant. There was ample evidence, however, tending to show that deceased and his companions had reasonable ground for arresting the defendant for murder, without a warrant. C. S., 4544.

We find no error on this appeal. The defendant has had a fair trial, in which all his rights under the law were carefully safeguarded. The judgment is affirmed.

No error.