The defendant was charged with the felonious slaying of D. P. Barefoot. The jury found him guilty of murder in the first degree.
The evidence for the State tended to show that the homicide occurred on the shore of Lake Waccamaw, at a point called Dupree's Landing, about midnight of 9 August, 1935; that the defendant, who was a married man, had driven there with a party in his automobile; that on the front seat with defendant were Mrs. Susie Lineberry and Ted Norris, and that Mrs. Nobles and Cyrus Cliff were on the back seat; that before going to the lake, while in the town of Whiteville, defendant had had some words with the witness Arp relative to Mrs. Nobles' presence in defendant's car, and that on the way to the lake Arp, in his car, had passed defendant's car twice and met it once. That a few minutes after defendant's car had arrived at Dupree's Landing, an isolated point on the sandy shore of the lake, another automobile arrived, driven by the deceased, D. P. Barefoot; that Barefoot was accompanied by the witness *Page 120 
Jim Carey; that he stopped his car, also, on the shore of the lake, about three steps to the right of defendant's car. That defendant was unknown to either Barefoot or Carey. Of the party Carey knew only Susie Lineberry. There were lights on Barefoot's car but not on the defendant's. According to Jim Carey's testimony, Ted Norris got out of defendant's car, went up to Barefoot, who was sitting under the wheel with the glass down, and inquired with an oath why they were butting into their party. Barefoot replied that he was not bothering anybody, just riding around, and Norris struck Barefoot twice without resistance. Whereupon Carey got out on the ground and Norris had some words with him. Then defendant Buffkin got out of his car, came around the front of his car into the space between the cars, and Carey saw a pistol in his belt. Buffkin stood on the ground a few minutes and then walked over to Barefoot's car and shot him through the heart. Buffkin was standing two or three steps from Barefoot's car when he pulled his pistol out, walked up to the car, and shot him. Then defendant pointed his pistol at Carey and said, "If you have anything to say, I will shoot you." Mrs. Susie Lineberry got out of the car and told Buffkin not to shoot, and he said, "I will go, but don't call anybody's name here," and drove off.
Jim Carey testified that he didn't see Barefoot drinking or have a pistol, and that he didn't do anything when struck by Norris, except to turn a little to the right on the seat. No word was spoken by him to Buffkin. It was testified that Mrs. Nobles was married, but it did not appear whether Susie Lineberry (or Susie Price, as she was also known) was or not.
Witness Arp testified that he saw defendant Buffkin, Norris, Cliff, and two girls in an automobile in Whiteville about 10:30 p.m., and had conversation with defendant and asked for Mrs. Nobles; that defendant said she was not in his car; that later he passed Buffkin's car twice and met it once, on the road between Whiteville and the lake. Norris testified that defendant said, after Arp had stopped his car and questioned him about Mrs. Nobles, that he didn't like for anybody to stop his car.
Defendant Bright Buffkin, in his own behalf, testified as to the identity of those who were in the car with him, as to his movements from the time he left his home in Fair Bluff that afternoon until he was arrested at a filling station in West Whiteville shortly after the homicide. He admitted shooting the deceased, but testified he was attacked by Barefoot "with something in his hand," and that he shot in self-defense.
There was verdict of guilty of murder in the first degree, and from judgment thereon imposing sentence of death, defendant appealed. *Page 121 
Defendant's counsel, out of abundance of caution, noted numerous exceptions to the evidence, many of which were abandoned. We have examined all the exceptions which were noted as well as those which were discussed in the brief, and decide they cannot be sustained. Some of the questions may have been leading, but were otherwise unobjectionable.
Evidence as to the location of the road, places, and the movements of the defendant and others shortly before the homicide was competent to show the surrounding circumstances.
The testimony as to the movements of Arp, his car, and as to the exclamation in defendant's presence respecting the identify of Arp's car, was, we think, competent. The State was attempting to show, if it could, that some feeling had been aroused in the defendant by reason of Arp's conduct in Whiteville and on the road, and that when a car drove up beside his shortly after he had arrived on the shore of the lake he may have been actuated by the belief that Arp was still trying to "butt in" on his party.
It was competent for the State to show defendant had a pistol on his person with one chamber of the revolver exploded at the time he was arrested.
Nor was there vice in permitting a question to a witness whether Mrs. Lineberry was married or not.
Defendant's counsel, in his able argument before this Court as well as on brief, contended there was error in the ruling of the court below as to two of the jurors, and that a mistrial should have been ordered.
First, as to juror Proctor: Pending the trial, and after the State had rested its case, defendant's counsel asked that the court investigate the qualification of juror A. F. Proctor, alleging they had received information since the jury was impaneled that this juror had previously formed and expressed the opinion that defendant was guilty, whereas while the jury was being selected, on his voir dire, the juror had stated he had formed no opinion.
Thereupon the oral testimony of Crom Buffkin, A. E. Spivey, and A. H. Best was heard by the court. Crom Buffkin testified he had heard juror Proctor discuss the case and say he thought they were all guilty and ought to be punished — ought to be lynched. This witness stated he knew defendant but if he was any kin, it was distant. He admitted he had been indicted four or five times for assault with deadly weapon and for whiskey. A. E. Spivey testified he heard juror Proctor *Page 122 
say, in the presence of Crom Buffkin and A. H. Best, that he believed all of them were guilty. That was all he heard him say. Witness admitted he had been in court for driving a car while drunk and for fornication and adultery. A. H. Best testified that on one occasion he heard the case discussed when juror Proctor was present, but did not recall anything Proctor said.
In rebuttal, the State offered evidence that the character of juror Proctor was good, and that the character of Crom Buffkin and A. E. Spivey was bad.
Thereupon the court made the following order:
"Upon the hearing and investigation, the court finds that the said A. F. Proctor was duly summoned, and presented himself before the court, where he was interrogated under oath on the voir dire by counsel for the State and the defendant, and that he thereupon stated that he did not know and was not acquainted with the defendant, and was not related to him; that he had formed and expressed no opinion as to the guilt or innocence of the defendant, and had no impression of the case unfavorable to him; that he could go in the jury box and return a verdict, under his oath as juror, guided by the evidence and charge of the court as to the law; whereupon said juror was accepted by the State and the defendant, and along with the other jurors impaneled for the trial of this cause.
"The court further finds that the said Proctor is qualified to serve as a juror in this case, and is an indifferent, impartial juror.
"Wherefore, the motion of the defendant to disqualify and withdraw said juror Proctor and declare a mistrial is denied by the court in the exercise of his discretion."
The finding of the court that the juror was qualified is conclusive and the exception thereto cannot be sustained. S. v. Potts, 100 N.C. 457.
The court, in effect, found that the evidence offered to prove the disqualification of the juror was not credible.
This motion was equivalent to what the common law designated as a challenge propter affectum, and fell into the category of a challenge to the favor rather than a challenge for principal cause, and the finding as a fact by the trial judge that a juror is indifferent is not reviewable on appeal. Butler v. Ins. Co., 196 N.C. 203.
As to juror Foster Stanley, the defendant's contention was that Stanley was related by marriage to the deceased D. P. Barefoot. It appeared, however, that juror's uncle, Vance Gore (now deceased), had married Lew Baldwin; that Lew Baldwin's sister Alma had married one Barefoot, who was the father of the deceased; or, in other words, that juror Stanley's deceased uncle's wife's sister had married the father of the deceased. This would not constitute relationship by consanguinity *Page 123 
or affinity. The juror was in law not related by marriage to the deceased.Bliss v. Caille, 149 Mich. 601; 2 C. J., 378. The objection in that respect was properly overruled.
The defendant further complained that he had not had sufficient time within which to properly prepare his defense, and that two witnesses, Struthers and Carter, could not be procured, and excepted to the denial of his motion for continuance, and later moved to set aside the verdict.
It appears from the record that the homicide occurred on 9 August and trial was begun on the 27th.
Upon these motions the court below found the following facts:
"That during the progress of the trial, and while the jury was being selected, and before the jury was impaneled, the defendant stated that he had information that the juror Foster Stanley, who had theretofore been passed and accepted by the State and the defendant, was related to the deceased D. P. Barefoot, and requested that he be permitted to further examine the juror Stanley upon the voir dire, whereupon the court recalled the juror Stanley and reopened the voir dire for further interrogation by the defendant of the juror Stanley as to the relationship; that the said juror stated upon said examination that his wife was not related by blood or marriage to the deceased D. P. Barefoot; that he was not related to said D. P. Barefoot, and was not acquainted with him; that the juror's uncle, Vance Gore, a brother of the juror's mother, married a lady named Lew Baldwin; that the said Lew Baldwin was not related to the deceased in any way; if so, the juror did not know it."
"That during the progress of the examination, Hon. Jackson Greer, Sr., of counsel for the defendant, stated he had just had a conversation with one Leon Baldwin, who informed him that Lew Baldwin married Vance Gore, an uncle of the juror, and that Alma Baldwin, the sister of Lew Baldwin, married one Barefoot, who was the father of the deceased D. P. Barefoot; that at the time of the interrogation of the said juror the defendant had not exhausted the peremptory challenges allowed him by law, and had more than two challenges unused; that the defendant did not offer to challenge the said juror for cause, or peremptorily subsequent to said interrogation; that at the time the juror was drawn and called Vance Gore was dead, having died about three years ago, leaving one child surviving; that the said juror Stanley was an indifferent, impartial juror, and was not within the 9th degree of kinship, disqualifying a juror."
"The court further finds that the jurors selected and impaneled for the trial of this case were fair and impartial jurors."
"That the defendant was arraigned on Tuesday, 20 August, at which time he was represented by counsel, and pleaded not guilty; the trial was set for Tuesday, 27 August, and prior thereto and at the preliminary *Page 124 
hearing, or coroner's inquest, on 12 August, the defendant was represented by counsel, Greer Greer, counsel having stated upon arraignment that the defendant had not finally completed arrangements for representation, whereupon the court offered to appoint counsel to represent the defendant, which was not accepted."
"That the information with respect to the said jurors was brought to the attention of the court as soon as discovered by counsel in the case, and affidavits were filed upon the making of the motion for a new trial for the defendant Buffkin."
"It further appears to the court, and the court finds, that no statement in writing has been made, or filed, as to the evidence proposed to be elicited from or given by the witnesses Struthers or Carter."
"Thereupon, the said motion to set aside the verdict of the jury herein and to grant a new trial is, in the discretion of the court, overruled."
The facts found fully sustain the court's ruling.
Finding of fact by the court upon evidence that the juror was indifferent was conclusive and not reviewable in this Court. S. v. Potts,supra; Butler v. Ins. Co., supra.
During the argument to the jury defendant's counsel objected to the solicitor's reading to the jury excerpts from the opinion in S. v. Daniel,139 N.C. 549. Whereupon the court stopped the argument and cautioned the jury, "telling them that counsel was not permitted to argue the facts in any other case or to read facts in any other case for any purpose except to explain and illustrate the application of a principle of law set forth in that case, and that the facts in that case had nothing to do with and should not be considered by the jury in a determination of the case they were trying."
His Honor's ruling was in strict accord with the principle laid down inS. v. Cameron, 166 N.C. 379, and Harrington v. Wadesboro, 153 N.C. 437.
The motion to nonsuit was properly denied. S. v. Johnson, 184 N.C. 637.
And there was evidence sufficient to go to the jury that the homicide was willful, deliberate, and premeditated. S. v. Lipscomb, 134 N.C. 689. The State's evidence, which was accepted by the jury, tended to show that the defendant had a party of two women and two other men with him in his car and had parked on a lonely shore of Lake Waccamaw at midnight. The deceased drove up and parked in three steps of him. The deceased did not know the defendant or any of those in the car with him. One of defendant's companions got out of his car, went to deceased's car, accused him of "butting in" on their party, and assaulted him. Deceased offered no resistance. Thereupon defendant got out of his car on the left side, armed with a pistol, walked around the front *Page 125 
of the car to within two or three steps of deceased and stood there several minutes, certainly an appreciable period of time, and then walked up to the deceased's car and shot him through the heart. Deceased had not spoken to defendant, and there was no provocation by word or act. Defendant then threatened to shoot the companion of deceased, Carey, and only when urged by one of the women in defendant's car did he leave, with the warning, "Don't call anybody's name here."
While proof of a motive for the homicide is not necessary where the evidence shows an intentional killing with deliberation and premeditation, the inference is permissible from the facts disclosed as to what transpired between defendant and Arp, coupled with defendant's warning "not to call anybody's name," that defendant was actuated by the purpose to prevent "butting in" on his party. But omitting that, there was ample evidence to show premeditation and deliberation. The State's evidence showed an unprovoked and heartless slaying.
As was said by the Court in S. v. Lipscomb, supra: "There was ample time for deliberation and premeditation by the defendant according to any rule that has been laid down upon the subject. No particular time is required for this mental process of premeditation and deliberation. The question always is whether, under all the facts and circumstances of the case, the defendant had previously and deliberately formed this particular and definite intent to kill, and then and there carried it into effect. This is a question for the jury to determine."
"The question as to whether or not there has been deliberation is not ordinarily capable of actual proof, but must be determined by the jury from the circumstances. It has been said that an act is done with deliberation, however long or short a time intervenes after the intent is formed and before it is executed, if the offender has an opportunity to recollect the offense or to be aware of what he is about to do, and its consequences." Citing Kerr on Homicide, sec. 72; S. v. Benson, 183 N.C. 795; and S. v.McCormac, 116 N.C. 1033.
In S. v. Walker, 173 N.C. 780, Brown, J., uses this language: "The numerous cases in our reports upon this subject all declare that when the purpose or design to kill is formed with deliberation and premeditation, it is not necessary that such purpose or design shall be formed any definite length of time before the killing. No particular time is required for this process of premeditation or deliberation. When a fixed purpose to kill is deliberately formed, it is immaterial how long after the purpose to kill is put into execution."
This premeditation and deliberation, like any other fact, may be shown by circumstances, and in determining whether there was such premeditation and deliberation, the jury may consider the entire absence *Page 126 
of provocation and all the circumstances under which the homicide was committed. S. v. Roberson, 150 N.C. 837.
In determining the question of premeditation and deliberation, it is proper for the jury to take into consideration the conduct of the defendant, before and after, and all attendant circumstances, and it is immaterial how soon after resolving to kill the defendant carried his purpose into execution. S. v. Evans, 198 N.C. 82; S. v. Miller,197 N.C. 445.
In S. v. Evans, supra, Chief Justice Stacy quotes with approval from Kerr on Homicide, sec. 72: ". . . the want of provocation, the preparation of a weapon, proof that there was no quarreling just before the killing may be considered by the jury, with other circumstances, in determining whether the act shall be attributed to sudden impulse or premeditated design."
Premeditation means thought over beforehand for some length of time, however short, but no particular time is required for the mental process of premeditation. Deliberation means revolving over in the mind. A deliberate act is one done in a cool state of the blood in furtherance of some fixed design. S. v. Walker, 173 N.C. 780; S. v. Benson, 183 N.C. 795; S. v.Evans, supra.
Defendant made numerous exceptions to the judge's charge; in fact, excepted to almost every clause of it, but points out no particular in which he contends the law was not correctly stated, and complains now only as to its arrangement, and as to the forceful language in which the contentions were stated.
This exception cannot be sustained. S. v. Johnson, 161 N.C. 264.
If any of the contentions of the defendant were omitted, or those of either side incorrectly stated, this should have been called to the attention of the court at the time. Failing to do so, he has no good ground for exception. McIntosh N.C. Prac. and Proc., sec. 580.
An examination of the comprehensive and carefully worded charge of the learned judge satisfies us that every phase of the case was properly presented to the jury, and that the definitions of murder in the first degree, murder in second degree, and manslaughter, as well as the law of self-defense, were in accord with the authoritative decisions of this Court.
We have examined the record with the care which the gravity of the issue demands, and we find
No error. *Page 127