STATE v. FAB STEWART.

(Filed 1 May, 1946.)

**1. Homicide § 21—**

> Premeditation and deliberation are not presumed from a killing with a deadly weapon, but may be shown by circumstances, and all the circumstances under which the homicide was committed may be considered, one such circumstance being the entire absence of legal provocation.

**2. Homicide § 4c—**

If a person forms a fixed design to kill, and thereafter executes such intent, however soon or late, there is sufficient premeditation and deliberation to warrant the jury in finding him guilty of murder in the first degree.

**3. Homicide § 25—Evidence of premeditation and deliberation held sufficient to sustain conviction of murder in the first degree.**

The State's evidence tended to show the following circumstances: Defendant was searching for a man whom he had seen with his wife. In his search he entered a house, and in response to questioning, the owner of the house declared he did not know where the person, the object of defendant's search, had gone. Defendant started to leave, but then demanded of a visitor in the house the same information, and received a negative reply. Defendant then said, "You is a damn lie, you have saw him," and again received a negative reply. Defendant cursed him again and received a reply in kind, whereupon defendant said, "You call me a G—— d—— lie and I'll shoot hell out of you," and pulled a pistol from his pocket and shot and killed him. *Held:* The evidence is sufficient to show premeditation and deliberation and sustain a verdict of guilty of murder in the first degree.

APPEAL by defendant from *Bone, J.,* at January Term, 1946, of WAKE.

Criminal prosecution upon indictment charging the defendant with the murder of one Ernest Jones, Jr. The evidence tends to show: That on the afternoon of 15 December, 1945, about 1:00 o'clock, the defendant and his wife had a quarrel. His wife left home and stated she was going to the home of her mother at 706 Carroll's Alley, in the City of Raleigh. A short time thereafter the defendant went to the home of his wife's mother and his wife was not there. He later went to the home of James Harris and saw his wife, and a man by the name of Lee McQueen coming out of the toilet. He engaged in a fight with his wife. Immediately thereafter he obtained a pistol and went in search of McQueen. He went to the home of Clyde Wright, who lived at 712 Carroll's Alley. He entered the front door of the house in which Clyde Wright and the deceased were. He did not speak to either of them until after he had walked through the room and into an adjoining room. When he came back into the room, he inquired of Wright if he had seen Lee McQueen. Wright answered that he had, but that he could not tell him where he had gone. The defendant said, "I caught that s.o.b. with my wife today."

The defendant turned as if to leave by the door he had entered and then made inquiry of Ernest Jones, Jr., who was a Sergeant in the Army and was home on furlough, if he had seen Lee McQueen. The deceased answered that he had not. The defendant said: "You is a damn lie, you have saw him." The deceased said: "I haven't." The defendant said: "You is a G—— d—— lie, you did see him," and the deceased replied:

"You are another G—— d—— lie, I haven't saw him." Whereupon, the defendant said: "You call me a G—— d—— lie and I'll shoot hell out of you," and he pulled a pistol out of his pocket and shot him, killing him instantly.

Just prior to his arrest, several hours after the fatal shooting, the defendant made the statement: "I killed the G—— d—— negro," or "The G—— d—— negro is dead," or "out of the way." After his arrest, he told the officers he was looking for Lee McQueen and the deceased denied having seen McQueen, when he thought he had, "So he cursed him and shot him." One of the officers testified that the defendant said: "He shot this boy when he was actually looking for Lee, if he had just gotten Lee, been able to find Lee, he would have been willing to smell the gas."

Verdict: Guilty of murder in the first degree.

Judgment: Death by asphyxiation.

Defendant appeals to the Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes, Moody, and Tucker for the State.*

*Harvey Jones and Brassfield & Maupin for defendant.*

DENNY, J. The only question presented upon this appeal is whether the evidence tending to show premeditation and deliberation is sufficient to sustain a verdict of murder in the first degree.

The defendant contends that there is no evidence to show that he knew the deceased or that he had ever seen him prior to the afternoon of the killing; that he killed the deceased in the heat of passion, caused by the vile language used by the deceased, at a time when he was already mad; therefore, at most, he is only guilty of murder in the second degree. The defendant is relying principally upon *S. v. Thomas,* 118 N. C., 1113, 24 S. E., 431, and *S. v. Rhyne,* 124 N. C., 847, 33 S. E., 128.

In *S. v. Thomas, supra,* there was no evidence of the use of a deadly weapon, and the Court said: "In any aspect of the evidence, there was error, to take the view most favorable of the charge, in omitting to explain to the jury the application of the testimony to the theory of murder in the second degree, when the prisoner's counsel was maintaining that the prisoner ought to be convicted of no higher crime. For this error there must be a *venire de novo.*" While in the case of *S. v. Rhyne, supra,* there was legal provocation, to wit, an assault and battery.

The defendant, by his own admission to the officers, was looking for Lee McQueen at the time he killed the deceased, and he said he shot him because he thought the deceased was withholding information as to the

whereabouts of McQueen. He never contended that he shot the deceased in the heat of passion because of any vile language used by the deceased. In fact, the record discloses that the deceased had twice stated that he had not seen McQueen. The defendant had cursed him twice before the deceased replied in kind. Whereupon, the defendant said: "You call me a G—— d—— lie, and I'll shoot hell out of you," and he pulled a pistol out of his pocket and shot him.

Premeditation and deliberation are not presumed from a killing with a deadly weapon. However, "Premeditation and deliberation, like any other fact, may be shown by circumstances, and in determining as to whether there was such premeditation and deliberation the jury may consider the entire absence of provocation and all the circumstances under which the homicide is committed. *S. v. Roberson,* 150 N. C., 837; Carr on Homicide, sec. 72. If the circumstances show a formed design to take the life of the deceased, the crime is murder in the first degree." *S. v. Walker,* 173 N. C., 780, 92 S. E., 327. *S. v. Benson,* 183 N. C., 795, 111 S. E., 869; *S. v. Steele,* 190 N. C., 506, 130 S. E., 308; *S. v. Newsome,* 195 N. C., 552, 143 S. E., 187; *S. v. Evans,* 198 N. C., 82, 150 S. E., 678; *S. v. Matheson,* 225 N. C., 109, 33 S. E. (2d), 590.

In *S. v. Newsome, supra,* this Court said: "Deliberation and premeditation, if relied upon by the State, as constituting the homicide murder in the first degree, under the statute, must always be proved by the evidence, beyond a reasonable doubt. In such case, under the statute as construed by this Court, it is for the jury and not the judge to find the fact of deliberation and premeditation, from the evidence, and beyond a reasonable doubt. Premeditation and deliberation are always matters of fact to be determined by the jury, and not matters of law to be determined by the judge."

In the case of *S. v. Evans, supra, Stacy, C. J.,* speaking for the Court, said: "In determining the question of premeditation and deliberation, it is proper for the jury to take into consideration the conduct of the prisoner, before and after, as well as at the time of, the homicide, and all the attendant circumstances. If the killing took place simultaneously with the formation of the intent to kill, there would be no premeditation. Nor would flight be evidence of it. *S. v. Steele, supra.* But if the prisoner weighed the purpose of killing long enough to form a fixed design, and at a subsequent time, no matter how soon or how remote, put it into execution, there would be sufficient premeditation and deliberation to warrant the jury in finding him guilty of murder in the first degree. *S. v. Teachey,* 138 N. C., 587, 50 S. E., 232; *S. v. Dowden,* 118 N. C., 1145, 24 S. E., 722. It is immaterial, in determining the degree of murder, how soon after resolving to kill, the prisoner carried his purpose into execution. *S. v. Covington,* 117 N. C., 834, 23 S. E., 337. Pre-

meditation means 'thought of beforehand' for some length of time, however short, but no particular time is required for the mental process of premeditation. *S. v. Benson, supra.* Deliberation means that the act is done in a cool state of the blood, in furtherance of some fixed design. *S. v. Walker,* 173 N. C., 780, 92 S. E., 327."

If the defendant intended to kill the deceased and did so for revenge, because he thought the deceased was withholding information as to the whereabouts of McQueen, even though the fixed design to kill was formed immediately before he fired the fatal shot, he is guilty of murder in the first degree. Or if the defendant armed himself with a pistol and determined to find McQueen, and determined to kill anyone whom he thought was withholding information as to McQueen's whereabouts, and actually did kill the deceased for that reason, he is guilty of murder in the first degree. No legal provocation in mitigation of the defendant's conduct is shown in this record. *S. v. McDowell,* 145 N. C., 563, 59 S. E., 690.

We are not prepared to hold, in the light of our decisions, that all the facts and attendant circumstances are insufficient to sustain the verdict of murder in the first degree.

In the trial below, there is

No error.